UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAMES RAY MILLER,

    Plaintiff,

vs.

THE CITY OF SPRINGFIELD
POLICE DIVISION, *et al.*,

    Defendants.

Case No. 3:19-cv-145

Magistrate Judge Michael J. Newman
(Consent Case)

---

**ORDER AND ENTRY: (1) DENYING DEFENDANT MCFALL'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 32); (2) DENYING IN PART AND GRANTING IN PART THE MEDICAL CENTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 34); (3) GRANTING THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY THE CITY OF SPRINGFIELD POLICE DIVISION (DOC. 31); AND (4) GRANTING THE MOTION TO DISMISS FILED BY DEFENDANTS MCCARTY AND SCHWARZ (DOC. 33) AND DISMISSING CLAIMS AGAINST THEM WITHOUT PREJUDICE**

---

This is a civil case in which *pro se* Plaintiff James Ray Miller alleges, *inter alia*, civil rights claims under 42 U.S.C. § 1983 against the City of Springfield, Ohio Police Division ("SPD"); SPD officers Luke Schwarz, Tyler McCarty and Cody McFall (hereinafter referred to collectively as "the SPD Officers"); the Springfield Regional Medical Center ("Medical Center");[1] Medical Center security guards Davin Craycraft, Michelle Pamer, and Josh Williams; Medical Center nurse Roberta-Lin Owens; Medical Center technician Brandon Kelsey; and one or more unidentified John/Jane Does.[2]  Doc. 1.

---

[1] Community Mercy Health Partners conducts business as Mercy Health Springfield Medical Center and is identified in the compliant as "[t]he Springfield Regional Medical Center."  Doc. 34 at PageID 110.

[2] On August 26, 2019, Defendant Wayne Dillahunt, a Springfield Police Officer, was voluntarily dismissed from this case with prejudice.  Docs. 19, 20.

Now pending before the Court are four motions: (1) SPD's motion for judgment on the pleadings (doc. 31); (2) McFall's motion for judgment on the pleadings (doc. 32); (3) a motion to dismiss filed by Defendants McCarty and Schwarz (doc. 33); and (4) a motion for summary judgment filed by Defendants Craycraft, Kelsey, Owens, Pamer, Williams and the Medical Center (hereinafter collectively referred to as "the Medical Center Defendants") (doc. 34). Miller filed memoranda in opposition to these motions (docs. 35, 36, 39), and Defendants filed replies (docs. 37, 38, 40). The Court has carefully considered all of the foregoing, and these motions are now ripe for decision.

## I.

To challenge whether a plaintiff, in his or her complaint, states a claim upon which relief can be granted, a defendant may file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c). "The only difference between Rule 12(c) and Rule 12(b)(6) is the timing" of when the motion is filed, *i.e.*, a Rule 12(b)(6) motion is filed before the party files an answer, whereas a Rule 12(c) motion is filed after the party files an answer. *Hunter v. Ohio Veterans Home,* 272 F.Supp.2d 692, 694 (N.D. Ohio 2003). Otherwise, the standard for reviewing a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) motions is the same. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A motion for summary judgment, on the other hand, challenges the sufficiency of the evidence rather than the sufficiently of the allegations in a pleading. *See* Fed. R. Civ. P. 56(c)(1). A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On summary judgment, courts do not weigh the evidence or make credibility findings and, instead, all facts must be viewed in the light most favorable to the non-moving party." *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007).

## II.

The facts set forth herein are those alleged by Miller in his *pro se* complaint and are liberally construed in his favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On May 12, 2017, Miller accompanied a friend to AMVETS in Springfield, Ohio where he and his friend "had several drinks." Doc. 1 at PageID 9. After leaving AMVETS, Miller's friend drove him to his truck, which was parked at the Love's Travel Stop in Springfield ("Love's"). *Id*. At Love's, Miller lost consciousness in the restroom, was transported to the Medical Center, and was involuntarily committed at the Medical Center as a result of his incapacitation and inability to care for himself. *Id*.

Miller has no memory of being transported to or arriving at the Medical Center, and his next memory after losing consciousness at Love's is waking up at the Medical Center -- presumably in the early morning hours of May 13, 2017.[3] *Id*. After waking, Miller declined further

---

[3] In arguing that Miller's claims are time-barred by application of the appropriate statute of limitations, Defendant McFall, in his motion for judgment on the pleadings, construes Miller's complaint to allege that the events giving rise to this action occurred on May 12, 2017. Doc. 32 at PageID 103. The Court understands McFall's confusion in this regard, but disagrees with his conclusion regarding the appropriate date at issue. The confusion appears to stem from the fact that, while Miller specifically alleges that he and his friend went to AMVETS on May 12, 2017, he does not allege the specific date upon which he awoke at the Medical Center after being involuntarily committed. Doc. 1 at PageID 9. In liberally construing the allegations, the undersigned finds that Miller sufficiently alleges that he "awoke" at the Medical Center on May 13, 2017, not May 12, 2017, and that all events occurred subsequent to his awakening at the hospital also occurred on May 13, 2017. *Id*. Even in the absence of a liberal construction, the undersigned could nevertheless reasonably infer that he awoke at the Medical Center on May 13, 2017. *See Iqbal*, 556 U.S. at 678. Notably, having reviewed Miller's deposition submitted by the Medical Center Defendants in support of their motion for summary judgment, it does appear that the conduct giving rise to Miller's claims, in fact, occrued on May 13, 2017. *See* doc. 34 at PageID 142.

3

treatment and alleges he was advised by a physician and Medical Center staff that, although they did not want him walking back to his truck, he was otherwise free to leave the Medical Center. *Id*.

Miller then sought to use his cellphone to arrange for transportation back to his truck from the Medical Center. *Id*. However, because Miller was unable to get cellphone service inside the Medical Center, he told the staff that he was going outside to make a call. *Id*. at PageID 10. As Miller attempted to walk outside, security guards at the Medical Center stopped him from exiting. *Id*. Miller then re-approached Medical Center staff who informed him again that, while he should not walk back to his truck, he was otherwise free to leave. *Id*.

Miller then proceeded to exit the Medical Center and call a taxi. *Id*. As he walked towards the exit, Medical Center guards called Defendant Schwarz -- a Springfield police officer who was at the hospital for an unrelated incident. *Id*. "Suddenly, and without provocation," SPD officers and Medical Center security guards allegedly tackled Miller, "slammed" his head into an uncarpeted floor, and handcuffed one of his wrists. *Id*. Thereafter, an unknown individual was "on top of him[,] pinning him down," and Miller was "surrounded by at least [six] armed officers and security guards." *Id*. During this encounter, an SPD officer held him and threatened to use a taser if Miller did not place his arm behind his back. *Id*. Subsequently, Miller was tased on the left side of his lower back and suffered personal injuries and memory loss. *Id*. at PageID 11. Miller was also arrested and charged with assault, resisting arrest, and obstructing official business, although those charges were later dismissed. *Id*. at PageID 11-12.

Miller now brings this action asserting federal claims under 42 U.S.C. § 1983 against all Defendants, as well as state law negligence claims against all Defendants except for SPD.[4] *Id*. at

---

[4] Even assuming, *arguendo*, that Miller sought to assert a state law negligence claim against SPD or the City of Springfield, such claims would be subject to dismissal because SPD and/or the City of Springfield is/are entitled to immunity from state law tort claims under Ohio Rev. Code § 2744.02. *See Lee v. Cleveland*, 784 N.E.2d 1218, 1222 (Ohio Ct. App. 2003).

4

PageID 12-13. With regard to the individually named SPD Officers and Medical Center Defendants, Miller purports to assert claims against them in both their individual and official capacities.[5] Notably, Miller's claims all arises from his allegedly unlawful seizure as he exited the Medical Center and Defendants' allegedly excessive use of force in effectuating such seizure. *Id*. Miller asserts no claims related to his involuntary commitment or medical care prior to the aforementioned seizure and use of force. *Id*.

### III.

At the outset, the Court will address the motion to dismiss filed by Defendants McCarty and Schwarz who contend that Miller's individual capacity claims against them should be dismissed for failure of service of process. Doc. 33. "Unless a named defendant agrees to waive service, the summons continues to be the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999). Absent either waiver or proper service of process, this Court does not have personal jurisdiction over Defendants. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (and cases cited therein).

Pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the [C]ourt -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Plaintiff bears the burden of exercising due diligence in perfecting service of process and in showing that proper service has been made. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *Jacobs v. Univ. of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999).

---

[5] "[A] section 1983 action against [an official] in his or her official capacity is treated as an action against the [public] entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, Miller's official capacity § 1983 claims against Defendant SPD Officers Schwarz, McCarty, and McFall are, in actuality, claims against the City of Springfield. *See Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 825 (S.D. Ohio 2002).

Notably, the docket in this case fails to evidence any service of process on either McCarty or Schwarz or that they otherwise waived service. In opposition to their motion to dismiss, Miller contends that he served the SPD Officers, as well as SPD, by delivering a request for waiver of service on them at the SPD office located at 130 North Fountain Avenue in Springfield. Doc. 36 at PageID 182. Both McCarty and Schwarz provide affidavits stating that their employment with SPD ended in 2017. *See* doc. 22-2 at PageID 68-67.

Even assuming, *arguendo*, that Miller did deliver copies of the complaint and summonses directed to McCarty and Schwarz to SPD, and further assuming, *arguendo*, that both were employed by SPD at that time, service of process at an employer's address is insufficient under federal law to perfect service on a defendant sued in his or her individual capacity. *Abel v. Harp*, 122 F. App'x 248, 251 (6th Cir. 2005) (citation omitted); *see also Thompson v. Kerr*, 555 F. Supp. 1090, 1093 (S.D. Ohio 1982) (holding that "Federal Rule 4(d)(1) requires that service upon individuals be made to the individual personally, at his [or her] dwelling house, or through his [or her] authorized agent"; and that "the requirements of Rule 4(d)(1) are not satisfied by service upon a defendant's place of work or business"). The same is generally true under Ohio law as well. *Bell v. Midwestern Educ. Serv., Inc.*, 624 N.E.2d 196, 202 (Ohio Ct. App. 1993) ("[I]n order to justify service on a defendant at a business address, the party being served must have such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served").

Here, Miller fails to meet his burden of showing proper service on either McCarty or Schwarz, despite having been granted additional time to perfect such service. *See* doc. 26. Accordingly, Defendants McCarty and Schwarz were not properly served as required by Fed. R. Civ. P. 4(m) and, therefore, their motion (doc. 33) is **GRANTED** and claims asserted against them

in their individual capacity must be **DISMISSED WITHOUT PREJUDICE**. *See Cap. City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2015 WL 7179663, at *2-3 (S.D. Ohio Nov. 16, 2015).[6] Because official capacity claims against Defendants McCarty and Schwarz will be dismissed as set forth *infra*, upon entry of this Order, no claims will remain pending against McCarty or Schwarz in any capacity.

### IV.

Next, the Court addresses the motion for judgment on the pleadings filed by SPD. Doc. 31. SPD sets forth three arguments, namely, that Miller's complaint is subject to dismissal because: (1) SPD is not *sui juris*, *i.e.*, is not an entity capable of being sued; (2) the claims are barred by the applicable statute of limitations; and (3) Miller fails to sufficiently allege a § 1983 claim against SPD under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

With regard to SPD's first argument, the Court agrees with SPD that "[p]olice departments are not *sui juris*, meaning they are not capable of suing or being sued." *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002) ("Police departments are not *sui juris*; they are merely sub-units of the municipalities they serve"); *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987) (dismissing a police department as an improperly named party to the action). Thus, claims against SPD should be dismissed.

In addition to the foregoing, claims against SPD or the City of Springfield -- which is the real party in interest on claims asserted against the SPD Officers in their official capacities, *see supra* -- should be dismissed because Miller also fails to state a claim against them. Under § 1983, government entities, such as the City of Springfield, are considered persons and "may be sued for

---

[6] Claims against unknown Defendants must also be dismissed for the same reason. *Humes v. City of Blue Ash*, No. 1:12-CV-960, 2013 WL 5934429, at *3 (S.D. Ohio Oct. 31, 2013) (stating that "[t]here is abundant authority supporting the dismissal of John Doe defendants when a plaintiff has failed to effect service of process on them within the [time] required by Rule 4(m)").

7

constitutional deprivations." *Monell*, 436 U.S. at 690-91. However, such entities cannot be held liable under § 1983 for the acts of employees or officials on a *respondeat superior* theory. *Id.* at 693. Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To demonstrate *Monell* liability, a plaintiff must: (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (internal citations omitted).

Here, Miller fails to allege a custom or policy that resulted in his alleged constitutional injuries. *See* doc. 1. Therefore, SPD's motion (doc. 31) is **GRANTED,** and Miller's claims against SPD and the City of Springfield (*i.e.*, claims against the SPD Officers in their official capacities) are **DISMISSED**. Accordingly, upon entry of this Order, no claims will remain pending against the SPD or the City of Springfield.

**V.**

The Court will next address the motion to dismiss filed by Defendant McFall (doc. 32) who, as mentioned above, is alleged to have been an SPD Officer at the time of the events giving rise to this case. Defendant McFall moves to dismiss Miller's claims against him on the basis that they are barred by the applicable statute of limitations. Doc. 32. Notably, Defendant McFall sets forth no other argument in support of dismissal, such as arguments regarding qualified immunity or immunity under Ohio Rev. Code § 2744.03.

As held by the Sixth Circuit, "the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code §2305.10, which requires that actions for bodily injury be filed within two years after their accrual." *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). Ohio law likewise provides for a two-year limitations period for

state law negligence claims. *See Nadra v. Mbah*, 893 N.E.2d 829, 834 (Ohio 2008) (finding that "when bodily injury results from negligence the two-year statute of limitations" in Ohio Rev. Code § 2305.10 governs such an action). Having concluded that the actions giving rise to Miller's § 1983 and negligence claims occurred on May 13, 2017, he had until May 13, 2019 to file his complaint. Miller's complaint, however, was not docketed by the Clerk of Courts until May 14, 2019. *See* doc. 1 at PageID 1.

In conjunction with his complaint, Miller filed a document explaining efforts he made on May 13, 2017 to file his complaint in person with the Clerk of Courts. Doc. 2. The undersigned liberally construes that document as a supplement to his complaint and, *nunc pro tunc*, accepts it as appropriately filed. *See* Fed. R. Civ. P. 15(d). According to Miller, he attempted to file his complaint in-person with the Clerk on May 13, 2019, but arrived after the Clerk's Office was closed for the day. *See* doc. 2. After returning home, Miller attempted to file his complaint electronically, but discovered that *pro se* litigants are not permitted to do so under the Court's Local Rules. *Id.*; *see* S.D. Ohio Civ. R. 3.1(a). According to Miller, he then emailed the Clerk a copy of the complaint before midnight on May 13, 2019. Doc. 35 at PageID 176. Miller returned to the Clerk's Office the next day, May 14, 2019, to deliver a hard copy of his complaint, pay the filing fee, and otherwise comply with the Court's *pro se* filing requirements. Miller now requests the Court deem his complaint timely filed on May 13, 2019. *See* doc. 35.

While the statute of limitations is borrowed from state law, the timeliness of an action is determined by federal law. *Browning*, 869 F.2d at 992. Specifically, "[t]he timeliness … turns on the date the action was commenced in accordance with Rule 3 of the Federal Rules of Civil Procedure." *Farley v. Koepp*, 788 F.3d 681, 684 (7th Cir. 2015) (citing *West v. Conrail,* 481 U.S. 35, 39 (1987)). In similar circumstances to those presented here, Courts have held that "e-mailing the complaint to the [C]lerk [is] a proper way of delivering it" and, thus, "a complaint is filed on

9

the date it is delivered to the [C]lerk, regardless of defects . . . and under Rule 3 the action is commenced on that date." *Id*. at 685.

In light of the foregoing, the Court finds that Miller timely commenced this action on May 13, 2019 when he emailed his complaint to the Clerk of Courts for filing.  Accordingly, the Court **DENIES** Defendant McFall's motion for judgment on the pleadings (doc. 32).  Following entry of this Order, all individual capacity claims asserted against Defendant McFall remain pending.

## VI.

Finally, the Court will now address the motion for summary judgment filed by the Medical Center Defendants, who assert two arguments: (1) that Miller's complaint was untimely filed and, therefore, barred by the applicable statute of limitations; and (2) that the Medical Center cannot be liable for § 1983 claims on the basis of vicarious liability.  Notably, the Medical Center Defendants set forth no argument that they are not state actors for purposes of § 1983 liability.  Nor do set forth any argument regarding Miller's negligence claims.

As noted *supra*, the undersigned concludes that Miller timely commenced this action by emailing his complaint to the Clerk on May 13, 2019.  Accordingly, the Medical Center's motion for summary judgment is **DENIED** in this regard.  The Court, however, agrees with the Medical Center that -- unlike with regard to state law claims of negligence, *see Evans v. Smith*, 646 N.E.2d 217, 221 (Ohio Ct. App. 1994) -- no § 1983 liability exists against the Medical Center on the basis of *respondeat superior* or vicarious liability alone.  *Cf. Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) ("[E]very circuit to consider the issue has extended to private corporations as well the rule that a defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis" (internal quotations omitted)).

Instead, a § 1983 claim against the Medical Center can potentially exist only if, *inter alia*, Miller's "constitutional rights were violated and that a policy or custom" of the Medical Center

10

"was the moving force behind the deprivation of [those] rights." *Id*. (internal quotation marks omitted). As argued by the Medical Center, Miller fails to allege that a policy or custom of the Medical Center caused the alleged deprivation of his constitutional rights. Accordingly, the motion for summary judgment is **GRANTED** with regard to Miller's § 1983 claim against the Medical Center, but otherwise **DENIED** in all other respects.

Following entry of this Order, § 1983 claims against the Medical Center itself are **DISMISSED**. Miller's negligence claims remain pending against all Defendants, including the Medical Center. All individual capacity § 1983 claims against the Medical Center Defendants (*i.e.*, Defendants Craycraft, Pamer, Williams, Owens, and Kelsey) also remain pending.

## VII.

For the foregoing reasons, the Court: (1) **DENIES** the motion for judgment on the pleadings filed by Defendant McFall (doc. 32); (2) **DENIES IN PART** and **GRANTS IN PART** the motion for summary judgment filed by the Medical Center Defendants (doc. 34); (3) **GRANTS** the motion for judgment on the pleadings filed by the SPD (doc. 31); and (4) **GRANTS** the motion to dismiss filed by Defendants McCarty and Schwarz (doc. 33) and **DISMISSING** claims against them **WITHOUT PREJUDICE**.

As a result of the foregoing, no claims remain pending against Defendants Schwarz, McCarty, SPD, or the City of Springfield (*i.e.*, official capacity claims asserted against the SPD Officer Defendants). In addition, § 1983 claims against the Medical Center itself are dismissed. The following claims remain pending in this case: (1) individual capacity § 1983 and state law negligence claims against Defendant McFall; (2) individual capacity § 1983 and state law negligence claims against Defendants Craycraft, Pamer, Williams, Owens, and Kelsey; and (3) state law negligence claims against the Medical Center.

The Court hereby schedules a telephone status conference with Miller and counsel for Defendants on **November 4, 2020 at 11:00 a.m.** for the limited purpose of selecting a trial date. Counsel shall call: 1-888-278-0296, enter access code 2725365, security code 123456, and wait for the Court to join the conference.

**IT IS SO ORDERED.**

Date:  October 20, 2020                                                s/ Michael J. Newman
                                                                           Michael J. Newman
                                                                           United States Magistrate Judge