UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAMES RAY MILLER,

     Plaintiff,                        Case No. 3:19-cv-145

vs.

THE CITY OF SPRINGFIELD          District Judge Michael J. Newman
POLICE DIVISION, *et al*.,          Magistrate Judge Sharon L. Ovington

     Defendants.

---

**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT MCFALL'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 46); (2) GRANTING THE MEDICAL CENTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO 47); (3) DENYING THE MEDICAL CENTER DEFENDANTS' MOTION FOR RECONSIDERATION (DOC. NO. 47); (4) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. NO. 48); AND (5) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (DOC. NO. 63)**

---

This is a civil case in which *pro se* Plaintiff James Ray Miller alleges, *inter alia*, civil rights claims under 42 U.S.C. § 1983 against City of Springfield, Ohio Police Division ("SPD") officer Cody McFall; the Springfield Regional Medical Center ("Medical Center");[1] Medical Center security guards Davin Craycraft, Michelle Pamer, and Josh Williams; Medical Center nurse Roberta-Lin Owens; and Medical Center technician Brandon Kelsey (collectively, "Medical Center Defendants").[2]  Doc. No. 1.

---

[1] Community Mercy Health Partners conducts business as Mercy Health Springfield Medical Center and is identified in the complaint as "[t]he Springfield Regional Medical Center."  Doc. No. 34 at PageID 110.

[2] On August 26, 2019, Defendant Wayne Dillahunt, a Springfield Police Officer, was voluntarily dismissed from this case with prejudice.  Doc. Nos. 19, 20. Additionally, Defendants City of Springfield, Ohio Police Division, Luke A. Schwartz, and Tyler S. McCarty were dismissed from this action in the Court's October 20, 2020 Order and Entry. Doc. No. 41.

Now pending before the Court are four motions and their respective briefing: (1) Defendant McFall's motion for summary judgment (doc. nos. 46, 52 54); (2) the Medical Center Defendants' motion for summary judgment and for reconsideration (doc. nos. 47, 52, 55); (3) Plaintiff's motion for reconsideration (doc. nos. 48, 51, 56); and (4) Plaintiff's motion for leave to amend his complaint (doc. no 63)  The Court has considered all of the foregoing, and these motions are now ripe for decision.

## I.

The facts set forth herein are viewed in the light most favorable to *pro se* Plaintiff, the non-moving party. *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007).

On May 12, 2017, Plaintiff accompanied a friend to AMVETS in Springfield, Ohio where he and his friend "had several drinks."  Doc. No. 1 at PageID 9.  After leaving AMVETS, Plaintiff's friend drove him to his truck, which was parked at the Love's Travel Stop in Springfield ("Love's").  *Id.*  At Love's, Plaintiff lost consciousness in the restroom, was transported to the Medical Center, and was involuntarily committed at the Medical Center as a result of his incapacitation and inability to care for himself.  *Id.*

Plaintiff has no memory of being transported to or arriving at the Medical Center, and his next memory after losing consciousness at Love's is waking up at the Medical Center -- presumably in the early morning hours of May 13, 2017.  *Id.*  After waking, Plaintiff declined further treatment and alleges he was advised by a physician and Medical Center staff that, although they did not want him walking back to his truck, he was otherwise free to leave the Medical Center. *Id.*

Plaintiff then sought to use his cellphone to arrange for transportation from the Medical Center to his truck.  *Id.*  However, because he was unable to get cellphone service inside the Medical Center, he told the staff that he was going outside to make a call.  *Id.* at PageID 10.  As

Plaintiff attempted to walk outside, security guards at the Medical Center stopped him from exiting. *Id*. Plaintiff then re-approached Medical Center staff who informed him again that, while he should not walk back to his truck, he was otherwise free to leave. *Id*.

Plaintiff then proceeded to exit the Medical Center and call a taxi. *Id*. As he walked towards the exit, Medical Center guards called Officer Schwarz -- a Springfield police officer who was at the hospital for an unrelated incident. *Id*. "Suddenly, and without provocation," SPD officers and Medical Center security guards allegedly tackled Plaintiff, "slammed" his head into an uncarpeted floor, and handcuffed one of his wrists. *Id*. Thereafter, an unknown individual was "on top of him[,] pinning him down," and Plaintiff was "surrounded by at least [six] armed officers and security guards." *Id*. During this encounter, an SPD officer held him and threatened to use a taser if Plaintiff did not place his arm behind his back. *Id*. Subsequently, Plaintiff was tased on the left side of his lower back and suffered personal injuries and memory loss. *Id*. at PageID 11. Plaintiff was also arrested and charged with assault, resisting arrest, and obstructing official business, although those charges were later dismissed. *Id*. at PageID 11-12.

Plaintiff brings this action asserting federal constitutional claims under 42 U.S.C. § 1983 against all Defendants, as well as state law negligence claims. *Id*. at PageID 12-13. With regard to SPD Officer McFall and the Medical Center Defendants, Plaintiff asserts claims in both their individual and official capacities.[3] Notably, Plaintiff's claims all arise from his allegedly unlawful seizure as he exited the Medical Center and Defendants' allegedly excessive use of force in

---

[3] "[A] section 1983 action against [an official] in his or her official capacity is treated as an action against the [public] entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, Plaintiff's official capacity § 1983 claims against Defendant SPD Officer McFall is in actuality a claim against the City of Springfield. *See Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 825 (S.D. Ohio 2002).

effectuating such seizure.  *Id.*  Plaintiff asserts no claims related to his involuntary commitment or medical care prior to the aforementioned seizure and use of force.  *Id.*

## II.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted).  Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted).  Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d

399, 404 (6th Cir. 1992) (citations omitted).

## III.

In his motion for summary judgment, Defendant McFall makes two primary arguments: (1) Plaintiff fails as a matter of law on his § 1983 claims, his state law claim, and his claim for punitive damages; and (2) Plaintiff's *pro se* complaint was untimely filed. *See generally* doc. no. 46.

In order to state a claim under § 1983, a plaintiff must: (1) allege the violation of a right secured by the Constitution and law of the United States; and (2) show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1991). Here, McFall does not dispute that he was acting under color of state law, therefore the Court's analysis focuses on whether there is a constitutional right at issue. Doc. No. 46 at PageID 444.

### A.  Fourth and Fourteenth Amendment Claims

Plaintiff first contends that McFall violated the Fourth Amendment during his arrest by "unlawfully seizing him and depriving him of liberty when Defendants tackled, restrained and arrested, and incarcerated him." Doc. No. 1 at PageID 12.  Construing Plaintiff's allegations liberally in his favor, he asserts a seizure and use of excessive force claim, both under the Fourth Amendment. *Id.*; *see Williams v. Maurer*, --- F.4th ---, 2021 WL 3629921, at *13 (6th Cir. 2021) ("[T]hrough an excessive force claim brought under § 1983, 'physically intrusive governmental conduct' that 'arises in the context of an arrest or investigatory stop of a free citizen' can be challenged as violating the Fourth Amendment." (citation omitted)).  However, Plaintiff concedes that McFall did not arrive at the hospital until after Plaintiff was apprehended.  Doc. No. 52 at PageID 557 ("McFall was not the arresting officer, was not even present at any time during the assault on the Plaintiff").  Consequently, there is no genuine dispute over the fact that McFall was not involved in any allegedly unconstitutional seizure of Plaintiff relative to his arrest or in any

allegedly excessive force used during Plaintiff's arrest. Summary judgment is therefore warranted in McFall's favor on Plaintiff's Fourth Amendment seizure and excessive force claims. *See Abu-Joudeh v. Schneider*, 954 F.3d 842, 850 (6th Cir. 2020) ("To prevail in a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant was 'personally involved in the [alleged] constitutional violations.'" (citation omitted)).

Plaintiff also argues that McFall violated his due process rights under the Fourteenth Amendment by "depriving him of his constitutional rights under the Fourth and Eighth Amendment." Doc. No. 1 at PageID. 12. McFall responds that Plaintiff fails on the merits of his claim, and also notes that Plaintiff's claim against him appears to be limited in scope. Doc. No. 46 at PageID 443-44. Plaintiff was asked during his deposition, "as to McCarty and McFall, the only allegations you're making of them is that they participated in submitting false reports of what happened?" and Plaintiff responded, "[t]hat's basically correct." Doc. No. 47-1 at PageID 498. Thus, Plaintiff's § 1983 claim, construed liberally in his favor, constitutes a fabrication of evidence claim under the Fourth and Fourteenth Amendment. *See Mills v. Barnard*, 869 F.3d 473, 484–85 (6th Cir. 2017).

To allege a fabrication of evidence claim under § 1983, a plaintiff must argue that a defendant "knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury." *Id.* (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)); *see also Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) ("It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury"). A fabrication of evidence claim does not

6

require a finding that the state lacked probable cause to prosecute the individual. *Stemler*, 126 F.3d at 872.

In his deposition, Plaintiff stated, "[t]hey came in after Schwarz and the security staff attacked me. But from the police reports I read, they backed him up and filed false reports along with him." Doc. No. 47-1 at PageID 494. McFall's attorney then began to read the police report into the record, and asked Plaintiff if he agreed if the statements in the police report were correct:

> Q: Then he says, "I gently grabbed Mr. Miller's arm to lead him back to his bed when suddenly he grabbed onto me and pushed me taking us both to the ground." I take it you disagree with that?
>
> A: The video disagrees with that.
>
> Q: Do you disagree with it?
>
> A: Oh, yes.
>
> Q: "At the time I began wrestling with Mr. Miller. With the help of security, I ordered him to put his hands behind his back. However, he refused." I think we've already talked about that. You disagree?
>
> A: I disagree, yes.

*Id*. at 498.  Plaintiff's statements sufficiently allege that McFall knowingly fabricated evidence against him. *Mills*, 869 F.3d at 484–85. If it is true that the police report contains inaccurate information regarding the confrontation between SPD officers and Plaintiff, there is a reasonable likelihood that the allegedly false police report could have affected the judgment of a jury.  *Id*. Plaintiff's deposition testimony indicates that there are genuine disputes about the accuracy of the police report. Doc. No. 47-1 at PageID 498.   The events recorded on the video fail to resolve whose characterization of the confrontation is accurate. *See* Doc. No. 64.  If McFall's report is factually accurate, and Plaintiff initiated the conflict between the officers and himself, the fabrication of evidence claim fails.  However, if Plaintiff's characterization is correct, and SPD

7

officers inaccurately stated that Plaintiff initiated the conflict, then a jury could reasonably find merit in his fabrication of evidence claim. *Id.*   Thus, summary judgment on this claim is inappropriate. *See Gregory*, 444 F.3d at 744-45; *see also Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015).

Regarding qualified immunity, in holding that there are genuinely disputed material facts, the Court similarly cannot determine if qualified immunity is warranted. *Id.* at 742-45. The doctrine of qualified immunity protects government officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It has been clearly established since at least 1992 "that knowing fabrication of evidence violates constitutional rights." *Mills*, 869 F.3d at 486-87. Thus, because Plaintiff has sufficiently established that there is a genuine dispute of material fact regarding the alleged fabrication of the police report, McFall is not entitled to qualified immunity at this time. *Webb*, 789 F.3d at 670.

### B.  Eighth Amendment Claim

Plaintiff next alleges that McFall violated his Eighth Amendment right to be free from excessive punishment when he used "excessive force to tackle, restrain, and taser him without probable cause, as he posed no threat." Doc. No. 1 at PageID 12. McFall argues that the Eighth Amendment's prohibition of cruel and unusual punishment is irrelevant to Plaintiff's claim that McFall falsified a police report. Doc. No. 46 at PageID 448.

The protections of the Eighth Amendment apply after the state "has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *see also Whitley v. Albers*, 475 U.S. 312, 318 (1986) (reaffirming *Ingraham*, 430 U.S. at 671). "The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with

8

the constitutional guarantees traditionally associated with criminal prosecutions.'" *Whitley*, 475 U.S. at 318 (citing *Ingraham*, 430 U.S. at 671) (citations omitted).

In this case, Plaintiff's excessive force claim stems from an incident that occurred before he was arrested or charged. *See* Doc. No. 1 at PageID 12; Doc. No. 47-1 at PageID 494. The Eighth Amendment does not apply to Plaintiff's claim because the State had not secured a formal adjudication against Plaintiff at the time of this incident. *Whitley*, 475 U.S. at 318. In fact, the State never secured an adjudication of guilt because the charges against Plaintiff were dismissed before he could be convicted of a crime. Doc. No. 47-1 at PageID 504. Therefore, McFall's motion for summary judgment on Plaintiff's § 1983 under the Eighth Amendment is **GRANTED** because it fails as a matter of law.

### C. Federal Punitive Damages

Plaintiff requests punitive damages in excess of $25,000. Doc. No. 1 at PageID 13. Punitive damages may be awarded in a § 1983 action only if a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983). McFall testified in his affidavit that he completed the police report at issue based on information Officer Schwarz provided to him. Doc. No. 46-1 at PageID 452-53.

Here, McFall's affidavit establishes that he intended to fill out the police report based on information from Officer Schwartz, and there is no conflicting evidence in the record. *See Kovacic v. Cuyahoga Cty. Dep't of Child. & Fam. Servs.*, 809 F. Supp. 2d 754, 793-94 (N.D. Ohio 2011). Moreover, Plaintiff presented no evidence about McFall's motives and has not demonstrated that McFall acted with evil intent, or with callous or reckless indifference to Plaintiff's rights. Plaintiff also has not pointed to any evidence in the record that demonstrates McFall knew he was violating Plaintiff's federal rights when he wrote the police report. *Id.* Therefore, the Court finds that

9

Plaintiff has failed to raise a reasonable inference that McFall's intent was evil or that he relied on Officer Schwarz with reckless or callous indifference to the truth. *Id*. at 494.

### D. State Law Negligence Claim

Plaintiff argues McFall is liable to him under Ohio negligence law for his "willful, wanton and reckless acts/omissions, when Defendant SPD officers wrongfully seized, tased, slammed to the floor with excessive force, injured, and arrested Plaintiff." Doc. No. 1 at PageID 13. In response, McFall asserts Plaintiff has failed to establish that his actions were malicious, wanton, or reckless. Doc. No. 46 at PageID 448-49.

Ohio law provides statutory immunity from suit to its police officers unless, among other things, the officer's "acts or omissions were with malicious purpose, in bad faith, or in a wanton and reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Wanton misconduct has been defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St. 3d 380 at 388. Reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*. Plaintiff's deposition testimony is focused on McFall's alleged false report of the incident at the hospital. Doc. No. 47-1 at PageID 498. In his affidavit, McFall testifies that he completed the police report at issue based on information Officer Schwarz provided to him. Doc. No. 46-1 at PageID 452-53.

In *Pernell v. Bills*, the Ohio Court of Appeals dealt with a factually similar case, where an officer detained and handcuffed a citizen after his computer system incorrectly indicated that the citizen was driving a stolen car. No. L-09-1082, 2009 WL 4725979 at *1-3 (Ohio App. Dec. 11, 2009). The court determined that the police officer was immune from liability, finding "no evidence that [the officer] acted with malice, bad faith, or acted recklessly or wantonly." *Id*. The

court continued, "to withstand a motion for summary judgment, [the plaintiff] had to show more than an unreasonable detention or an arrest without probable cause." *Id*. This case is instructive. As in *Pernell*, even if the information provided was inaccurate, a jury could not reasonably infer that McFall's actions rise to the high standard of wanton or reckless conduct. *Id*. Thus, McFall is entitled to summary judgment on this claim.

### E. State Law Punitive Damages

To get punitive damages on an Ohio state law claim, Plaintiff must establish that McFall's actions demonstrate malice, aggravated or egregious fraud, oppression, or insult. Ohio Rev. Code § 2315.21. Malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St. 344 (1987). Given that Plaintiff has failed to produce evidence that McFall is liable for gross negligence, Plaintiff also has not demonstrated he acted with malice. Consequently, Plaintiff is not entitled to punitive damages on that claim. *See Bearhs v. Steven K. Bierly Trucking Operating Co., Inc.*, No. 2:18-CV-1400, 2019 WL 3244023, at *3 (S.D. Ohio July 19, 2019).

### F. Timely Filing and Statute of Limitations

McFall argues that Plaintiff did not timely file his complaint within the statute of limitations period. Doc. No. 46 at PageID 440. In its October 20, 2020 Order, this Court determined that the date of the incident at issue was May 13, 2017. Doc. No. 41 at PageID 391. The Court also determined that Plaintiff timely filed his complaint by emailing it to the Court on May 13, 2019. *Id*. at PageID 392. McFall argues that the complaint was not actually filed until May 14, 2019, meaning that the action was not commenced within the two-year statute of limitations. Doc. No. 46 at PageID 441-42.

11

For actions brought pursuant to 42 U.S.C. § 1983, courts apply the statute of limitations from the forum state's general personal injury statute. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).  For § 1983 actions brought in Ohio, the relevant statute of limitations is two years. *Id.* at 855-56 (citing Ohio Rev. Code § 2305.10); *see also Rodriguez v. City of Cleveland*, 439 F. App'x 433, 458 (6th Cir. 2011).

McFall stressed in his briefing that Plaintiff's claims against him were limited to the allegation that he participated in submitting a false police report. Doc. No. 46 at 443-44.  As discussed above, the Court agreed, and construed Plaintiff's § 1983 claims against McFall as a "fabrication of evidence" claim.  *See supra* Part.III.A.

The accrual analysis for a § 1983 claim begins by identifying the specific constitutional right alleged to have been infringed. *McDonough v. Smith*, --- U.S. ---, 139 S. Ct. 2149, 2155 (2019).  The statute of limitations for a fabricated evidence claim, like Plaintiff's, does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his or her favor.  *Id.*; *see also Mills*, 869 F.3d at 484-85.

In Plaintiff's deposition, he states that the charges against him were dismissed in either late August or September. Doc. No. 47-1 at PageID 504-05. Thus, whether Plaintiff filed his complaint on May 13, 2017 or May 14, 2017 is immaterial to whether Plaintiff's complaint was timely filed, as the two-year statute of limitations clock would actually have started when the charges were dismissed in late August or September of 2017.  Because Plaintiff filed his complaint in May of 2019, he timely filed within the applicable two-year statute of limitations which expired in August or September of 2019. *McDonough*, --- U.S. ---, 139 S. Ct. at 2155.

## IV.

The Medical Center Defendants' motion for summary judgment and reconsideration asserts the following: (1) the Medical Center Defendants are not state actors and therefore cannot

12

be liable under § 1983; (2) Plaintiff has failed to establish gross negligence as to the Medical Center Defendants; (3) Plaintiff has failed to allege facts sufficient to support a claim for punitive damages; (4) Plaintiff has failed to serve Defendants Craycraft, Pamer, Williams, Owens, and Kelsey; and (5) the Court should reconsider its October 20, 2020 decision that Plaintiff's complaint was filed on May 13, 2019. *See generally* Doc. No. 47.

### A. § 1983 Claims

The Medical Center Defendants assert that they are not state actors and therefore cannot be liable under § 1983. Doc. No. 47 at PageID 464. Plaintiff does not respond to this assertion in his memorandum in opposition. Doc. No. 52.

As previously stated, to state a claim under § 1983, a plaintiff must show that the alleged deprivation was committed by a person acting under color of state law. *West*, 487 U.S. 42 at 48. In this case, Defendants Craycraft, Pamer, Kelsey, Owens, and Williams are employees of the private corporation, Springfield Regional Medical Center, and are not state actors under § 1983. However, a private party's actions can constitute "state action" under the Fourteenth Amendment if that party's actions may be "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

There are three tests used to determine whether private conduct may be fairly attributable to the state: (1) the public function test; (2) the state compulsion test; and (3) the nexus test. *Id*. at 1335. Plaintiff alleges that each of the Medxfical Center Defendants were state actors, "acting under the color of state law by working in concert and entanglement with the Springfield Division of Police Officers in carrying out their official duties." Doc. No. 1 at PageID 7-8. He also alleges "Defendant SRMC Security Guards and Employees acted under the color of law when they worked

13

in tandem with SPD officers to unlawfully seize, restrain, injure, and deprive Plaintiff of his constitutional rights." *Id*. at PageID 11.

Under the public function test, a private party is deemed a state actor if he or she exercises powers traditionally and exclusively reserved for the state. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003).  The public function test has been interpreted narrowly, such that only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action.  *Id*. at 833-34; *see also Flagg Bros v. Brooks*, 436 U.S. 149, 157-58 (1978) (elections); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352-53 (1974) (eminent domain); *Marsh v. Alabama*, 326 U.S. 501, 505-09 (1946) (company town).  Here, Plaintiff brings claims against employees of the Medical Center including security guards, a nurse, and a technician. Doc. No. 1 at PageID 7-8.  The Sixth Circuit has determined that private security officers, even if their actions include investigation of a crime, do not perform functions exclusively reserved to the state. *Chapman*, 319 F.3d 825, 833 (6th Cir. 2003). Additionally, because neither nurses nor technicians perform functions that are traditionally or exclusively reserved to the state, the public function test has not been met. *See id*. at 833-34.

"The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335.  The state must do more than merely approve or acquiesce in the initiatives of the private party to be held responsible. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  In this case, the state did not direct the security guards to stop Plaintiff from exiting the hospital; in fact, the opposite occurred. Doc. No. 1 at PageID 10.  Plaintiff, in his complaint, states that it was the security guards (Defendants Craycraft, Pamer, and Williams) who summoned the police officers, and that, together, the police officers and security guards tackled

14

him to the ground.  *Id*.  Additionally, Plaintiff does not allege that the officers directed the nurse, Defendant Owens, or the technician, Defendant Kelsey, to perform any action or behave in any particular way.  *See generally id*.  Plaintiff merely alleges that Defendants Owens and Kelsey "fail[ed] to ascertain that Plaintiff Miller was discharged from the Springfield Regional Medical Center." *Id*. at PageID 8. Therefore, Plaintiff fails to establish that the state exercised coercive power or provided significant encouragement to any of the Defendants at issue, and the Court does not find that any of the actions performed by the private defendants could be deemed to be that of the state.

Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. A challenged activity may be state action "when it is entwined with governmental policies or when government is entwined in its management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 289 (2001).  A plaintiff must demonstrate that "the state is so intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Wolotsky*, 960 F.2d at 1335.

Here, as previously stated, Plaintiff argues that each of the Medical Center Defendants worked "in concert and entanglement with the Springfield Division of Police Officers in carrying out their official duties" and also that they "worked in tandem with SPD officers to unlawfully seize, restrain, injure, and deprive Plaintiff of his constitutional rights." Doc. No. 1 at PageID 7-8, 11. These allegations do not suggest that the government was entwined with the "management or control" of the hospital.  *See Brentwood Acad*, 531 U.S. at 289. They merely suggest that the security officers, as well as other hospital personnel, aided law enforcement as they stopped

15

Plaintiff from leaving. Given these facts, the Court concludes that there was not a sufficiently close nexus between the state and the challenged actions of the Medical Center Defendants such that their actions could be fairly treated as that of the state itself. *See Wolotsky*, 960 F.2d at 1335.

Alternatively, Plaintiff's complaint suggests the Medical Center Defendants conspired with SPD officers, as he states that Defendants Craycraft, Pamer, Williams, Owens and Kelsey were "at all times relevant to this action [] a 'state actor,' acting under color of law by working in concert and entanglement with the Springfield Division of Police Officers in carrying out their official duties." Doc. No. 1 at PageID 7-8.

"Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983." *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985). In order to establish that a civil conspiracy existed between the SPD officers and the Medical Center Defendants, Plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id*. at 943-44.

Plaintiff fails to establish these elements in the instant case. Plaintiff alleges that "as [he] was trying to go outside, SRMC Security Guards barred him from the [exit]." Doc. No. 1 at PageID 10. He then "asked the hospital staff if he was free to leave, was told he could" and subsequently "turned back to the SRMC Security Guards, advised them he was free to leave…and began walking past SRMC Security Guards towards the exit." *Id*. Plaintiff asserts that the Medical Center security guards called Officer Schwartz over, who was at the hospital for an unrelated purpose, and "suddenly, and without provocation, Defendant SPD Officers and SRMC Security Guards tackled him, slammed his head to an uncarpeted floor, placed handcuffs on one wrist, and were on top of him pinning him down." *Id*.

16

Plaintiff does not allege facts or present evidence showing there was a single plan between the Medical Center Defendants and the SPD officers, and the only interaction between them occurred when the security guards called Officer Schwarz to assist in stopping Plaintiff from leaving SRMC. *Id*. Plaintiff did not assert during his deposition that an agreement was reached between these Defendants or that they had a general conspiratorial objective. *See* Doc. No. 47-1. When asked about these interactions during his deposition, Plaintiff testified, "[the security guards] called Officer Schwarz … over to -- I don't know what their intentions were. They called him over and he said I had to go back to my bed, and I said, no." *Id*. at PageID 493.  This testimony also fails to make out the elements of (1) a single plan; (2) a general conspiratorial objective; and (3) an overt act committed in furtherance of the conspiracy.  *Hooks*, 771 F.2d at 943-44.  Thus, the Medical Center Defendants are entitled to summary judgment on the § 1983 claims.

### B.  Federal Punitive Damages

Plaintiff requests punitive damages in excess of $25,000. Doc. No. 1 at PageID 13.  As previously stated, punitive damages may be awarded in a § 1983 action only where a defendant's conduct is shown to be motivated by evil motive or intent, or where a defendant's conduct involves reckless or callous indifference to the federally protected rights of others.  *Smith*, 461 U.S. at 56. As set forth above, Plaintiff has failed to establish that Defendants Craycraft, Pamer, Williams, Owens and Kelsey are state actors.  *See supra* Part IV.A.  Therefore, they cannot be liable under § 1983 and no punitive damages are available to Plaintiff for those claims.

### C.  Gross Negligence Claims

Plaintiff also alleges that the Medical Center Defendants are liable for gross negligence for their "willful, wanton and reckless acts/omissions, when Defendant SPD officers wrongly seized, tased, slammed to the floor with excessive force, injured, and arrested Plaintiff, assisted by

17

Defendant SMRC Security Guards and Defendant SRMC and its employees breached the duty of care under Ohio law by failing to intervene after discharging Plaintiff and advising he was free to leave." Doc. No. 1 at PageID 13.  The Medical Center Defendants respond by arguing that Plaintiff has failed to establish gross negligence as a matter of law. Doc. No. 47 at PageID 468.

Gross negligence is defined in Ohio as the "failure to exercise any or very slight care" or a "failure to exercise even that care which a careless person would use."  *Thompson Elec. v. Bank One, Akron, N.A.*, 37 Ohio St.3d 259 (1988).  To establish gross negligence, all elements of negligence must exist.  *CBC Engineers & Assocs. Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 888 (S.D. Ohio 2012).

Regarding the Medical Center security guards -- Defendants Craycraft, Pamer, and Williams -- Plaintiff claims that they "assisted" SPD officers in wrongfully seizing, tasing, slamming to the floor, injuring and arresting him.  Doc. No. 1 at PageID 13.  Plaintiff does not elaborate further on the level of care the security guards should have exercised in seizing him, nor does he discuss exactly how the guards breached that duty of care. Without more factual information regarding how the guards failed to exercise any or very slight care, Plaintiff has not produced sufficient evidence to create a genuine dispute of material fact.  *See Metro. Prop. & Cas. Ins. Co. v. Pest Dr. Sys., Inc.*, No. 3:14-CV-143, 2015 WL 4945767, at *6 (S.D. Ohio Aug. 20, 2015).  Thus, a jury could not reasonably find that the security guards were grossly negligent in assisting the SPD officers.

As to Defendant Owens, a nurse, Plaintiff claims that she (1) had something to do with marijuana found in his bed; (2) seemed to be supporting the officer's version of events; and (3) incorrectly charted in the medical record that he tried to push past the officers.  Doc. No. 47-1 at PageID 503-04.  Plaintiff claims that the marijuana found in his hospital bed was either planted,

18

or that the bed was not cleaned prior to his arrival. *Id.* at 495. However, he did not see anyone plant marijuana in his bed. *Id.* Plaintiff vehemently asserts that the marijuana was not his, and notably, no charges were brought against Plaintiff regarding the marijuana.

Plaintiff's allegations that Owens identified marijuana in his bed, and charted information in the medical record that supported the officer's version of events, do not suggest that she "fail[ed] to exercise any or very slight care" or that she "fail[ed] to exercise even that care which a careless person would use." *Thompson Elec.*, 37 Ohio St. 259. Given that Owens' alleged actions do rise to the level of gross negligence, Plaintiff has failed to make out a claim against her.

Plaintiff's claim against Defendant Kelsey, a technician at the hospital, is that Kelsey told the police that Plaintiff "was becoming hostile with him," a statement that Plaintiff disagrees with. Doc. No. 47-1 at PageID 504. Plaintiff's claim that Kelsey incorrectly characterized him as "hostile" is Plaintiff's only claim against Kelsey. *Id.* Plaintiff's allegations merely suggest that there is a difference of opinion regarding Plaintiff's behavior. The Court finds that Kelsey describing Plaintiff as "hostile" is not behavior that meets the standard for gross negligence. *Thompson Elec.*, 37 Ohio St. 259.

Finally, Plaintiff's gross negligence claim against the Medical Center appears to be on the basis of *respondeat superior*, as he stated "Defendant SRMC and its employees breached the duty of care under Ohio law by failing to intervene after discharging Plaintiff and advising him he was free to leave." Doc. No. 1 at PageID 13. Plaintiff does not allege that any specific actions taken by the hospital itself were grossly negligent. Additionally, because Plaintiff's claims against the Medical Center employees all fail, the Medical Center cannot be liable under a theory of *respondeat superior*. *See Strock v. Pressnell*, 38 Ohio St.3d 207, 217 (1988) (concluding that

*respondeat superior* could not apply where employee was not liable on the merits). Thus, Plaintiff's claims against the entity itself also fail.

### D.  State Law Punitive Damages

For punitive damages claims based on Ohio law, Plaintiff must establish that the Medical Center Defendants' actions demonstrate malice, aggravated or egregious fraud, oppression, or insult. Ohio Rev. Code § 2315.21.  Malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St. 344 (1987). Given that Plaintiff has failed to establish that any of the Medical Center Defendants are liable for gross negligence under Ohio law, Plaintiff also has not demonstrated that these Defendants acted with malice. Accordingly, Plaintiff is not entitled to punitive damages on that claim.  *See Bearhs v. Steven K. Bierly Trucking Operating Co., Inc.*, No. 2:18-CV-1400, 2019 WL 3244023, at *3 (S.D. Ohio July 19, 2019)

### E.  Failure to Serve

The Medical Center Defendants assert that Plaintiff has failed to serve Defendants Cracraft, Pamer, Williams, Owens, and Kelsey. Doc. No. 47 at PageID 471.  Absent either waiver or proper service of process, this Court does not have personal jurisdiction over those Defendants.  *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (and cases cited therein). Pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the [C]ourt -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m). Plaintiff bears the burden of exercising due diligence in perfecting service of process

and in showing that proper service has been made.  *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *Jacobs v. Univ. of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999).

The Medical Center Defendants note that they anticipate Plaintiff may argue he attempted to serve them at their place of employment.  Doc. No. 47 at PageID 471 n. 3. However, as discussed in the Court's October 20, 2020 Order, service of process at an employer's address is insufficient under federal law to perfect service on a defendant sued in his or her individual capacity.  Doc. No. 41 at PageID 388; *Abel v. Harp*, 122 F. App'x 248, 251 (6th Cir. 2005) (citation omitted).  The same is true under Ohio law as well.  *Bell v. Midwestern Educ. Serv., Inc.*, 624 N.E.2d 196, 202 (Ohio Ct. App. 1993) ("[I]n order to justify service on a defendant at a business address, the party being served must have such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served").

Here, even if the Court were to find that the Medical Center Defendants are liable to Plaintiff on any of his claims -- which it does not -- Plaintiff fails to meet his burden of showing proper service on Defendants Cracraft, Pamer, Williams, Owens, and Kelsey, despite having been granted additional time to perfect such service.  *See* doc. no. 26.  Accordingly, Defendants Cracraft, Pamer, Williams, Owens, and Kelsey were not properly served as required by Fed. R. Civ. P. 4(m), and Plaintiff's claims against them are dismissed without prejudice.

### F.  Motion for Reconsideration of Statute of Limitations Decision

The Medical Center Defendants request that the Court reconsider its October 20, 2020 decision -- that Plaintiff's complaint was filed within the statute of limitations period.  Doc. No. 47 at PageID 460.  Given that the Court has found the Medical Center Defendants are entitled to

summary judgment on their claims, the Court does not find it necessary to reconsider its earlier decision. Thus, the Medical Center's motion for reconsideration is **DENIED AS MOOT**.

## V.

### A. Plaintiff's Motion for Reconsideration

Plaintiff's motion for reconsideration requests that this Court reconsider the dismissal of Defendants City of Springfield Police Division, Luke A. Schwartz, and Tyler McCarty. Doc. No. 48. However, Plaintiff fails to allege that there is (1) a manifest error of law; (2) newly discovered evidence; or (3) a need to correct a clear error or prevent manifest injustice. *Sherrod v. Wal-Mart Stores, Inc.*, No. 3:14-CV-454, 2021 WL 534613, at *4 (S.D. Ohio Feb. 12, 2021) (quoting *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)).

As previously stated, "[m]otions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Sherrod*, 2021 WL 534613 at *4 (quoting *Northeast Ohio Coalition for Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009)). The Court previously found that the Springfield Police Department is not *sui juris* and is therefore not an entity capable of being sued, and additionally that Plaintiff failed to sufficiently allege a § 1983 claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Doc. No. 41 at PageID 389-90. The Court also previously determined that Plaintiff failed to meet his burden of showing proper service on McCarty or Schwartz, despite being granted additional time to perfect such service. *Id.* at PageID 387-89. Plaintiff's motion for reconsideration is merely an attempt to re-litigate issues the Court has already decided. Doc. No. 48 at PageID 525-28. Thus, Plaintiff's motion for reconsideration is **DENIED**.

### B. Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to file an amended complaint to add parties to this action. Doc. No. 63 at PageID 622. Rule (15)(a)(2) provides that leave to amend should be given "when justice so

requires." Denial of leave is warranted when there is "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "Although Rule 15(a) indicated that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The Court requires "at least some significant showing of prejudice to deny a motion to amend based solely upon delay." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (cleaned up). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (citation omitted).

In the instant case, the Court finds that there has been an undue delay in Plaintiff's filing of his motion. Plaintiff filed his complaint on May 13, 2019 and did not file the instant motion until August 4, 2021, after the completion of discovery and after motions for summary judgment were fully briefed. *See* Doc. No. 1; Doc. No. 63. Allowing amendment after discovery is closed and summary judgment motions are fully briefed would impose significant prejudice on Defendants. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018). Plaintiff unduly delayed moving for leave to amend his complaint for more than a year and provided no excuse or justification for the delay. In addition, allowing amendment months after the close of discovery and after dispositive motions were filed and briefed would result in significant prejudice on Defendants. *Id*. at 642; *see also Siegner v. Twp. of Salem*, 654 F. App'x 223, 228-29 (6th Cir. 2016); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001); *Duggins v. Steak 'N Shake,*

*Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).  Accordingly, Plaintiff's motion for leave to amend is **DENIED**.

## VI.

As a result of the foregoing, no claims remain pending against the Medical Center Defendants.  In addition, the § 1983 claims under the Eighth Amendment, the state law claim for gross negligence, and the claim for punitive damages against Defendant McFall are dismissed. The only claim that remains pending in this case is an individual capacity claim against Defendant McFall under the Fourth and Fourteenth Amendment. Accordingly, for the reasons above, the Court:

1. **GRANTS** Defendant McFall's motion for summary judgment in part and **DENIES** the motion in part (doc. no. 46);
2. **GRANTS** Defendants Springfield Regional Medical Center, Davin Craycraft, Michelle Pamer, Josh Williams, Roberta-Lin Owens; and Brandon Kelsey's motion for summary judgment, but **DENIES** their motion for reconsideration (doc. no. 47);
3. **DENIES** Plaintiff's motion for reconsideration (doc. no. 48); and
4. **DENIES** Plaintiff's motion for leave to file an amended complaint (doc. no. 63)

**IT IS SO ORDERED.**

Date:   September 2, 2021                    s/Michael J. Newman
                                             Hon. Michael J. Newman
                                             United States District Judge

24